TOWN OF WEST ORANGE ET AL., PROSECUTORS, v. STATE BOARD OF TAX APPEALS, DEFENDANT.

Argued May 10, 1935—Decided September 26, 1935.

Before BROGAN, CHIEF JUSTICE, and Justices LLOYD and DONGES.

For the prosecutors, *Samuel D. Williams.*

For the defendant, *Edward P. Stout* and *Spaulding Frazer.*

The opinion of the court was delivered by

DONGES, J.   These writs of *certiorari* bring up two judgments of the state board of tax appeals setting aside apportionments of the gross receipts taxes paid by the Public Service Gas and Electric Company for the years 1933 and 1934, and directing that the apportionments be made on the basis of valuations returned by the local boards of assessors of the various municipalities affected.

Under the Gross Receipts Tax act, chapter 25 of the laws of 1919, the local assessors are required to certify to the county boards and the county boards to the state tax department, the value of the personal property described in the act owned by corporations paying this tax, located in the taxing district.   The tax commissioner is required to make an apportionment based on the value of the personal property so located.

The tax commissioner had a tax engineer, one Farley Osgood, make a survey of the valuation situation and Osgood made a report thereon, recommending a unit capacity basis for valuing the property.   It was calculated by him that a certain plant value was required to produce a kilowatt-hour of electricity or a hundred cubic feet of gas.   The plant capacities in the various taxing districts were ascertained

and a valuation placed on this basis. The tax commissioner then adopted this valuation for the apportionment instead of using the valuations of the assessors as had been theretofore done.

On appeal to the state board of tax appeals, that body held that the basis adopted was unwarranted and illegal, set the apportionment aside, and directed an apportionment on the basis of the assessed valuations.

The first point argued is that the state board committed error in entertaining the appeal of the city of Hoboken as to the 1933 taxes because the appeal was not taken until ten months after the apportionment. The statutes creating and regulating the present state board of tax appeals, chapters 100 and 336 of the laws of 1931, give the board power to make reasonable rules and regulations governing appeals to it. The board has made a rule that appeals must be taken within one year and it is argued that this length of time is unreasonable and arbitrary. We do not agree with this contention. One year is allowed for appeals from final judgments in courts of law and final decrees in chancery, and we see nothing unreasonable in permitting this length of time for appeals in tax matters.

Point two is that the board should not have entertained the appeals because the city of Hoboken in its petition of appeal failed to allege facts upon which it can be shown that it was peculiarly aggrieved by the apportionments. The petition alleged the assessment by the local assessors and the amount thereof; it alleged that the "state tax commissioner completely ignored and disregarded same and made an independent, illegal and arbitrary valuation of said personal property;" and that as a result Hoboken received a smaller share of the tax than it was entitled to. This seems a sufficient allegation of interest. It is argued that the tax in question is not a property tax but in the nature of a franchise tax and that, therefore, a municipality has no right to complain even if it be assumed that the apportionment was erroneous. This is not so. The fund must be distributed in accordance with the statute and principles of law, and a municipality has a right to have its claim to the fund reviewed.

The third point is that there was no evidence to support the decision of the board. We are of the opinion that there was. It appeared from the testimony of the commissioner that his valuation was based entirely upon the so-called "unit capacity" valuation system evolved by Mr. Osgood. Physical values based upon a direct assessment were disregarded. The reports of the assessors were disregarded. What the commissioner did was not to revise and correct the assessments certified to him in accordance with the direction of the legislature, but to put them aside completely and adopt a system for which there is no legal authority. Obviously the legislature intended the assessments certified to be used as a basis for the apportionment of this tax, and we can see no legal warrant or authority in the statute to permit the commissioner to adopt a capacity basis such as the one adopted in this case. The board was justified in setting aside his apportionment, and in the absence of other legal proof that the assessments of the local assessors were erroneous, there was no error in adopting them as correct and ordering the apportionment on that basis.

The next point is that the state board exceeded its power in directing the basis upon which the apportionment should be made, assuming that it has power to review the acts of the commissioner. The power to review and set aside the decisions of the commissioner must clearly imply the power to correct the erroneous determinations. We are of the opinion that the judgments are within the power of the board.

The fifth point is that there was no power in the board to change the apportionment because the Franchise Tax act, chapter 195 (*Pamph. L.* 1900), certain features of which are applicable to the Gross Receipts Tax, provides "no change in the apportionment of the franchise tax shall be made after the apportionment by the said state board of assessors [now the state tax commissioner]." But obviously this was not intended to limit the power of a duly constituted appellate tribunal to correct errors. If this were so, the commissioner might capriciously award the entire sum to one municipality and there would be no method of correcting his action. Chapter 100 of the laws of 1931, gives the board power to "review, hear, and determine all appeals by any person, firm,

corporation, taxing district, municipality, or company, aggrieved by any act, proceeding, rule, decision, or determination of the state tax department or of the state tax commissioner." If there be any inconsistency between this section and the earlier act cited, the later act must prevail. We are of the opinion that the board had jurisdiction to entertain the appeal.

Points six and seven again argue that the judgment of the board went beyond its powers, but as stated above, we think it did not.

Point eight is that the judgment is contrary to the purpose, intent and scheme of the legislature in its efforts to bring about equalization of taxation. We see no force in this argument. The legislature provided for the use of the assessors reports in the apportioning of the tax, but the commissioner disregarded them and found a basis of his own.

The other points raise nothing new and require no discussion. Reduced to its essentials, the case presents two fundamental questions. First, did the state board of tax appeals have power to sit in review of the action of the commissioner, and we think it clearly did under the statute of 1931; and second, was it justified in setting aside the apportionment, and we think it was. The local assessors reports were filed in accordance with the statute and should have been used. If they were not accurate, it was within the power of the commissioner to correct them. But the assessments should be made on the basis of actual value reached through an appraisal. No legal basis is shown for the adoption of an arbitrary unit capacity method of fixing a value.

The writs should be dismissed.